## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

LEVI LANCASTER, I,

      Plaintiff,

v.

JEFFERY REHBERGER, SR., JEFFERY
REHBERGER, JR., LETIZIA LOWE,
CODY LOWE, LACEY'S PLACE LLC, and
LUCKY LINCOLN GAMING, INC.,

      Defendants.

Case No. 3:25-cv-01366-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Levi Lancaster ("Lancaster") initiated this action against Jeffery Rehberger, Sr. ("Rehberger, Sr."), Jeffery Rehberger, Jr. ("Rehberger, Jr."), Letizia Lowe, Cody Lowe, Lacey's Place LLC ("Lacey's Place"), and Lucky Lincoln Gaming, Inc. ("Lucky Lincoln") on July 14, 2025. (Doc. 1). Lancaster filed an amended complaint on November 25, 2025. (Doc. 67). His claims in this lawsuit arise from his employment at Lacey's Place as a gaming attendant. Defendants have all moved to dismiss the amended complaint. (Docs. 69, 72, 91).[1] For the following reasons, the motions are granted, and the amended complaint is dismissed.

---

[1] Also pending are two motions to dismiss addressed to the prior complaint. (Docs. 39, 51). Because the filing of an amended complaint supersedes the original pleadings, these motions will be denied as moot.

## BACKGROUND

The Court accepts as true the following facts, which are taken from Lancaster's Amended Complaint. (Doc. 67). The Amended Complaint frequently refers to exhibits contained in a 250-page supplement that Lancaster filed on July 31, 2025. (Doc. 9). Recognizing that Lancaster is proceeding without the assistance of counsel, the Court will consider these materials in construing his complaint, which is, at times, sparse on detail. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (noting that the Court may consider exhibits attached to the complaint on a motion to dismiss).

Lancaster was hired as an attendant at Lacey's Place, an Illinois-based operator of gaming parlors, on February 23, 2023.[2] The day after Lancaster's hiring, Defendant Jeffery Rehberger, Sr. allegedly promised him a promotion to the title of "District Manager," which would come with an $82,500 salary, a company car, and a laptop. Rehberger, Sr.'s role with Lacey's Place is not specified, but the company refers to him as its owner. (Doc. 92, p. 2).

Due to the promised promotion, Lancaster allowed Lacey's Place to include him as a signatory on its liquor license application and supporting documentation. In a matter of great concern to Lancaster, he signed these documents after they had been notarized by Defendant Letizia Lowe outside of his presence. In the attached exhibits, he clarifies that he signed the document outside of Ms. Lowe's presence at the direction of staff at

---

[2] Lancaster does not describe defendant Lucky Lincoln's role in this case in great detail, but he notes that Lacey's Place contracts with that company for gaming machines and "licensing support." (Doc. 67, p. 1).

the St. Clair County Sheriff's Department, where he was completing fingerprinting as part of the application process. (Doc. 9-33, p. 24).

Lancaster's promised promotion did not materialize. Nevertheless, over the following months, he performed duties exceeding his role as an attendant, including overseeing operations at Lacey's Place, collecting on debts, restocking supplies, and "handling confidential business matters." (Doc. 67, p. 2). He worked holidays off-the-clock and was not reimbursed for his purchases for the business. Ultimately, Cody Lowe, the son of Rehberger, Sr. and Letizia Lowe, received the promotion.

Lancaster alleges that he raised concerns about the company's liquor license and the scope of his duties but was "excluded from scheduling, demoted, and forced to resign" on October 25, 2024. (*Id.*). Despite his resignation, Lacey's Place continued to use Lancaster's name on its liquor license until January 9, 2025.

Lancaster then filed two EEOC charges, alleging that he experienced retaliation, constructive discharge, hostile work environment, and sex discrimination. The Court has located only one of the charges in the record. (Doc. 9-30, p. 2). The EEOC declined to bring a case on Lancaster's behalf and issued Right to Sue letters. (Doc. 9-31, pp. 20, 22). Lancaster alleges that certain unspecified defendants surveilled his social media accounts, used images of him in Lacey's Place's social media posts without authorization, and continued to contact him despite "cease-and-desist orders." (Doc. 67, p. 3).

Lancaster filed suit in this district court on July 14, 2025, naming Rehberger, Sr., Rehberger, Jr., Letizia Lowe, Cody Lowe, Lucky Lincoln, and Lacey's Place as defendants. As mentioned above, he later filed an amended complaint, which is the presently

Page 3 of 23

operative pleading. (Doc. 67). The amended complaint pleads seven claims: Title VII

retaliation (Count I) and constructive discharge (Count II) against Lacey's Place and the

individual defendants; a wage theft and misclassification claim under the Fair Labor

Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, against Lacey's Place (Count III); a claim

titled "Fraudulent Inducement and Licensing Fraud" against all defendants except Cody

Lowe (Count IV); a promissory estoppel claim against Rehberger, Sr. (Count V); a claim

titled "Enterprise Liability — Veil Piercing" against all defendants (Count VI); and a claim

under section 1962(c) of the Racketeer Influenced and Corrupt Organizations (RICO) Act,

18 U.S.C. § 1961, *et seq.*, against all defendants (Count VII).

Each defendant has joined in a motion to dismiss, collectively seeking dismissal of

the entire amended complaint:

- Lucky Lincoln and Rehberger, Jr. moved to dismiss the complaint under Rule 12(b)(6) (Doc. 69);

- Cody Lowe, Letizia Lowe and Rehberger, Sr. moved to dismiss the complaint in its entirety under Rule 12(b)(6) and one of the claims for lack of standing under Rule 12(b)(1) (Doc. 72); and

- Lacey's Place also moved to dismiss the complaint under Rules 12(b)(1) and (6) (Doc. 91).

### LEGAL STANDARD

A defendant's motion to dismiss may be granted in instances where the plaintiff's

complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

For a plaintiff to survive a motion to dismiss, the complaint must contain sufficient factual

allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007). To be plausible, an allegation must allow "the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The factual allegations stated in the second amended complaint will be taken as true and interpreted in "the light most favorable" to the plaintiff. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not entitled to the presumption of truth. *Ashcroft*, 556 U.S. at 678. This standard does not require "detailed factual allegations." *Bell Atl. Corp.*, 550 U.S. at 555. Rather, it simply requires that that the plaintiff gives "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

In evaluating a challenge to subject matter jurisdiction on the basis of standing under Rule 12(b)(1), a court must first determine whether a factual or facial challenge has been raised. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). "A facial challenge attacks standing on the pleadings, arguing that the plaintiff lacks standing even if the well-pleaded allegations in the complaint are taken as true. A factual challenge, by contrast, asserts that there is *in fact* no standing." *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 528 (7th Cir. 2024) (quoting *Flynn v. FCA U.S. LLC*, 39 F.4th 946, 952 (7th Cir. 2022)). An argument that a plaintiff did not adequately plead standing is a facial challenge. *Id.* In the Seventh Circuit, "when evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly–Iqbal*'s 'plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6). *Silha*, 807 F.3d at 173.

### DISCUSSION

#### a. Title VII Claims (Counts I and II)

The amended complaint pleads claims for retaliation and constructive discharge against each defendant except Lucky Lincoln. Defendants argue that these claims are defective for multiple reasons. Rehberger, Sr., Rehberger, Jr., Letizia Lowe, and Cody Lowe point out that Lancaster never alleges that they were his employer. Relatedly, they argue Lancaster has not alleged that he properly exhausted his claims through the EEOC. Defendants further contend that Lancaster failed to plead that he engaged in an activity covered by Title VII's anti-retaliation provision, that he experienced an adverse action, or that there was a causal connection between any protected activity and the adverse action. And, focusing on the constructive discharge claim, they argue Lancaster failed to allege that his working conditions were sufficiently intolerable.

Title VII of the Civil Rights Act of 1964 prohibits employers from engaging in various unlawful employment practices "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The statute also prohibits retaliation against an employee because he has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." *Id.* § 2000e-3(a); *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 382 (7th Cir. 2016).

Before bringing a Title VII claim, a plaintiff must first exhaust his administrative remedies by filing charges with the EEOC and receiving a right to sue letter. *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). At that point, the plaintiff may bring a suit in federal court but only for those claims "like or reasonably related to the allegations

Page 6 of 23

of the charge and growing out of such allegations." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc)).

Several defendants argue that Lancaster failed to properly exhaust his administrative remedies with the EEOC because he did not name them in his EEOC charge. Failure to exhaust is an affirmative defense. *Sagaitis v. W. Bend Ins. Co.*, 790 F. Supp. 3d 744, 748-49 (W.D. Wis. 2025) (citing *Salas v. Wisconsin Dep't of Corr.*, 493 F.3d 913, 922 (7th Cir. 2007)). A plaintiff therefore is not required to plead exhaustion, and the issue therefore is not typically addressed on a motion to dismiss, *Vance v. Amazon.com Servs., LLC*, No. 24-1111, 2024 WL 3823176, at *2 (N.D. Ill. Aug. 14, 2024); *Shofner v. Branding Iron Holdings, Inc.*, No. 15-1166, 2016 WL 879630, at *4 (S.D. Ill. Mar. 8, 2016), although there are exceptions to that rule, *see Bell v. DeJoy*, No. 24-1478, 2024 WL 4948846, at *2 (7th Cir. Dec. 3, 2024) (noting that failure to exhaust is a proper ground for dismissal when it is clear from the complaint that the affirmative defense applies).

Here, the amended complaint refers to two EEOC charges. Yet the Court has located only one of the charges in the exhibits Lancaster incorporated to his complaint by reference. (Doc. 9-30, p. 2).[3] Because the contents of the second EEOC charge are unknown, it is possible that Lancaster may have properly exhausted his administrative remedies. The Court therefore declines to consider this argument at this stage of the proceedings.

---

[3] Lancaster did attach two Right to Sue letters, suggesting the existence of a second charge. (Doc. 9-31, pp. 20, 22).

But other arguments are on better footing. The individual defendants note that Lancaster never alleges that they were his employer. Liability under Title VII turns on the existence of an employee-employer relationship. *See Bronson v. Ann & Robert H. Lurie Children's Hosp. of Chicago*, 69 F.4th 437, 448 (7th Cir. 2023) ("Only an employer can be liable under Title VII."). The statute defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). Lancaster must plead and "prove the existence of an employer-employee relationship." *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 928 (7th Cir. 2017) (quoting *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015)). An individual is not subject to liability under the statute merely because he or she is the employee's supervisor. *See Passananti v. Cook Cnty.*, 689 F.3d 655, 662 n.4 (7th Cir. 2012) ("Individual people who are agents of the employer cannot be sued as employers under Title VII."). Although the definition of employer mentions an employer's agents, the Seventh Circuit has held that Congress did not intend to impose individual liability on an employer's agents. *Williams v. Banning*, 72 F.3d 552, 553 (7th Cir. 1995); *see also Gastineau v. Fleet Mortg. Corp.*, 137 F.3d 490, 494 (7th Cir. 1998) (explaining that "Congress intended only for employers to be liable for their agent's actions under the traditional *respondeat superior* doctrine, not for agents to be personally liable.").

Lancaster's amended complaint does not characterize any of the individual defendants as his employer. In fact, he does not explain the nature of his working relationship with any of these defendants. At most, he alleges that Rehberger, Sr., by

promising him a promotion, was a supervisor. (Doc. 67, pp. 2-3). But Title VII does not impose liability on individual employees for their misdeeds. *See Douglas v. Wesolowski*, No. 25-00818, 2025 WL 1333782, at *1 (S.D. Ind. May 6, 2025). Therefore, Counts I and II must be dismissed as to Rehberger, Sr., Rehberger, Jr., Letizia Lowe, and Cody Lowe.

For its part, Lacey's Place — which Lancaster *does* identify as his employer — argues the amended complaint does not plausibly allege retaliation or constructive discharge. "To plead a retaliation claim under Title VII, a plaintiff must allege that she engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013). "The protected activity must be specifically identified." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014).

Lancaster appears to say he engaged in protected activity by voicing opposition to Lacey's Place's alleged misuse of its liquor license, "unpaid labor, unequal treatment, and use of his credentials." (Doc. 67, p. 3). But "[s]tatutorily-protected activity 'requires more than simply a complaint about some situation at work, no matter how valid the complaint might be.'" *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 718 (7th Cir. 2018) (quoting *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 901 (7th Cir. 2016)). The Seventh Circuit has made clear that while complaints to an employer can constitute protected activity, the complaint still must be connected to discrimination that "occurred because of sex, race, national origin, or some other protected class." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006); *see also Arnold v. United Airlines, Inc.*, 142 F.4th 460, 475 (7th Cir.

2025) ("In alleging retaliation for engaging in protected activity, the protected activity must be related to the alleged discrimination.").

Lancaster's internal complaints, which appear to focus on generalized concerns of potentially unlawful conduct, do not fit that mold. The only concern that arguably is relevant to Title VII is his mention of "unequal treatment," but he offers few details. Lancaster may be referring to the promotion that went to Cody Lowe. Yet nowhere in the amended complaint does he indicate a belief that Lowe was promoted over him on account of any protected characteristic.

Liberally construed, the amended complaint might be read to suggest his protected activity was *filing* the EEOC charges. Bringing an EEOC charge *is* protected activity. *See Tomanovich*, 457 F.3d at 663; *Anderson v. Donahoe*, 699 F.3d 989, 995 (7th Cir. 2012). Lacey's Place argues that even under that understanding of the amended complaint, the allegations remain deficient because Lancaster does not plausibly allege any retaliatory treatment caused by his EEOC filing, and any adverse actions were not sufficiently material in any event. It observes that some of the alleged mistreatment Lancaster describes — being excluded from the schedule, demoted, and forced to resign — occurred *before* he filed the EEOC charges, so there can be no plausible connection between his protected conduct and these adverse actions. That argument is persuasive, but Lancaster's complaint also could be read to allege another set of adverse actions related to the EEOC charges. On page 2 he writes, "Defendants retaliated by surveilling Plaintiff's social media, reusing his image and continuing contact despite cease-and-

desist orders." (Doc. 67, p. 2). Thus, the Court must assess whether *those* allegations are sufficient to state a claim.

To start, it makes no difference that these alleged adverse actions took place after Lancaster left his job at Lacey's Place; Title VII's anti-retaliation protections extend to former employees. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 345 (1997). Nevertheless, "[t]o count an employer's action as materially adverse, a plaintiff must show that the action would have 'dissuaded a reasonable worker from' engaging in protected activity." *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 901–02 (7th Cir. 2018) (quoting *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 68 (2006)). "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *White*, 548 U.S. at 67. "[P]etty slights or minor annoyances" will not do. *Id.* The statute "prohibits only those employer actions that are likely to deter victims of discrimination from invoking the Act's remedial mechanisms." *Henry v. Milwaukee Cnty.*, 539 F.3d 573, 586-87 (7th Cir. 2008).

Lancaster's allegations that Lacey's Place "surveill[ed]" his social media, "reus[ed] his image" and "continu[ed] contact despite cease-and-desist orders" are vague and fail to clearly describe the alleged mistreatment he endured on account of his EEOC filing. *Cf. Baez v. Visiting Nurse Serv. of New York Fam. Care Serv.*, No. 10-6210, 2011 WL 5838441, at *6 (S.D.N.Y. Nov. 21, 2011) (concluding that a plaintiff's generalized allegations regarding harassment, bullying, intimidation, and stalking were "too non-specific to support a retaliation claim"). In an effort to better understand the nature of the alleged retaliation, the Court reviewed the portions of Lancaster's exhibits cited in connection

with his description of the conduct. Based on the Court's assessment, it appears that Lancaster primarily is concerned by several social media posts on Lacey's Place's accounts where he is featured. (Exs. 206, 207, Doc. 9-31; Exs. 214, 215; Doc. 9-33). In one of the images, Lancaster is pictured behind a bar with another employee. (Ex. 207, Doc. 9-31). The image is captioned, "Stop in for a cold beverage and hot slots." (*Id.*). In the other post — captioned "Spin. Sip. Win." — Lancaster is seated at a gaming machine, facing away from the camera. (Ex. 214, Doc. 9-33). According to Lancaster, Lacey's Place posted the images in July 2025, more than six months after he had resigned.

Lancaster's mention of a "cease-and-desist order[]" does not appear to be connected to any court order, but instead an *email* he wrote on January 10, 2025 (presumably to an employee of Lacey's Place) demanding a cessation of communications, the imposition of "penalties" for harassment, a "guarantee" that no retaliation take place, and an investigation of certain unspecified social media harassment. (Ex. 188, Doc. 9-29).

With the benefit of this context, the Court is confident that, even drawing all reasonable inferences in Lancaster's favor, he has not alleged an adverse action sufficient to state a retaliation claim. At most, Lancaster's concern about social media "surveillance" and a violation of a "cease-and-desist order[]" boils down to disputes about Lacey's Place's social media posts in which he featured. Undoubtedly, being presented publicly as affiliated with a former employer is annoying, but it is, at most, the sort of "minor annoyance[]" that is insufficient to constitute unlawful retaliation. *White*, 548 U.S. at 68. An employer's use of a former employee's photo in routine social media posts, focused on advertising the employer's business, would not dissuade a reasonable employee from

invoking Title VII's protections. The limited nature of the posts here — two in total, one of which does not include Lancaster's face — does not make this a marginal case. Neither does Lancaster's "cease-and-desist" email to Lacey's Place, sent six months prior to the posts and making vague statements about social media "harassment." Simply put, the Court does not see in the alleged conduct anything close to an adverse action prompted by his EEOC charge. *Cf. MacGregor v. DePaul Univ.*, No. 10-00107, 2010 WL 4167965, at *6 (N.D. Ill. Oct. 13, 2010) (concluding that the removal of a plaintiff's name from a collection of photographs she had taken was objectively not sufficiently adverse to state a retaliation claim). Accordingly, his retaliation claim must be dismissed.

Lancaster also alleges that he was constructively discharged from his role at Lacey's Place because the defendants "created intolerable conditions through manipulation, exclusion, coercion, and false promises." (Doc. 67, p. 3). It is well-settled that an employee's constructive discharge from his role can satisfy the adverse action requirement of a retaliation claim. *See Kinney v. St. Mary's Health, Inc.*, 76 F.4th 635, 648 (7th Cir. 2023); *Ziccarelli v. Dart*, 35 F.4th 1079, 1091 (7th Cir. 2022). The Seventh Circuit recognizes two forms of constructive discharge. In the first form, an employee resigns due to discriminatory "working conditions even more egregious than that required for a hostile work environment claim." *Fields v. Bd. of Educ. of City of Chicago*, 928 F.3d 622, 625 (7th Cir. 2019) (quoting *Wright v. Ill. Dep't of Children and Family Servs.*, 798 F.3d 513, 527 (7th Cir. 2015)). Examples of this type of constructive discharge include threats to a plaintiff's life or physical safety. *See, e.g., Porter v. Erie Foods, Int'l, Inc.*, 576 F.3d 629, 640

(7th Cir. 2009) (claim for constructive discharge possible where harassment included repeated use of noose and implied threats of physical violence).

"The second occurs when an employer acts in a manner that would make clear to a reasonable employee that she will be immediately fired if she does not resign." *Fields*, 928 F.3d at 625 (citing *Wright*, 798 F.3d at 527; *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679–80 (7th Cir. 2010)). Here, a plaintiff must still show his working conditions were "so intolerable that [his] resignation qualified as a fitting response." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 134 (2004). "The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Id.* at 141. "[A] working condition does not become intolerable or unbearable merely because a 'prospect of discharge lurks in the background.'" *Chapin*, 621 F.3d at 679 (quoting *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 333 (7th Cir. 2004)).

Defendants argue that, as with Count I, Lancaster has not alleged that he engaged in any protected activity that would trigger Title VII's protections, and the amended complaint does not describe working conditions so intolerable as to state a claim. (Docs. 69, 73, 92).

The former point is sufficient. "Constructive discharge" is not a free-standing cause of action that an employee can raise if they resign in the face of any workplace issue. Rather, it is a recognized way an employee can satisfy the adverse action element of a discrimination or retaliation claim. *See Green v. Brennan*, 578 U.S. 547, 555 (2016) (explaining that Title VII treats an employee's decision to resign in the face of intolerable discrimination, i.e., the constructive discharge, "as tantamount to an actual discharge");

*Wince v. CBRE, Inc.*, 66 F.4th 1033, 1043 (7th Cir. 2023). Here, even assuming Lancaster had alleged that he was constructively discharged, he did not plead facts that would support an inference that his discharge was *caused* by a protected activity or classification. As explained above, the only protected activity identified by Lancaster was his filing of an EEOC charge. Of course, he did not file with the EEOC until June 2025, more than six months *after* he resigned from his position at Lacey's Place. It would not be reasonable to believe that the defendants constructively discharged him based on an event that had not yet occurred, so this claim must be dismissed.[4]

### b. FLSA Claim (Count III)

Next, Lancaster alleges that Lacey's Place violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et. seq.*, by failing to compensate him for certain time he worked off-the-clock and by misclassifying him while assigning him managerial duties. His allegations are light on detail, but he elucidates further in the portion of the amended complaint setting out his demand for damages. There, he avers he "worked off the clock an estimated four hours per week for approximately 87.43 weeks at a rate of $16.50 per hour, resulting in $5,770.20 in unpaid labor." (Doc. 67, p. 5). He also alleges being "denied eight hours of holiday pay" totaling $180. (*Id.*). Lancaster says that he worked 25 hours per week at $16.50 an hour. (*Id.*).

---

[4] The Court suspects that Lancaster may be mistaking Title VII's anti-retaliation protections for those of certain whistleblower statutes. The core theme of his complaint is his allegation that the defendants retaliated against him for his complaints regarding potentially unlawful conduct. But "Title VII is not a catch-all whistleblower statute; its protections for retaliation are limited strictly to retaliation for opposing practices that Title VII makes unlawful," such as discrimination on the basis of race, religion, sex, or national origin. *Montoya v. Atkore Int'l, Inc.*, No. 17-3628, 2018 WL 1156245, at *3 (N.D. Ill. Mar. 2, 2018). Lancaster's concerns do not appear to implicate any of those categories.

Lacey's Place responds that Lancaster failed to allege that it is an employer covered by FLSA. *See* 29 U.S.C. § 206(a). It also points out that Lancaster never claims to have worked more than 40 hours per week for the Act's overtime protections to apply, and Lancaster's own allegations indicate his compensation never fell below the minimum wage. The Court construes Lancaster to raise three issues regarding his pay: (1) his alleged unpaid off-the-clock work, (2) the denial of "holiday pay," and (3) the alleged misclassification of his job title.

The FLSA affords workers two key protections that are relevant here. First, the Act requires employers pay the federal minimum wage "to each of his employees who in any workweek is engaged in commerce." 29 U.S.C. § 206(a); *Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 664 (7th Cir. 2022). "Employers who violate § 206(a) are liable to their employees for unpaid wages and may also be liable for liquidated damages." *Brant*, 43 F.4th at 664. Second, the Act requires employers to pay non-exempt employees one and one-half times their regular rate for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207.

The Court puts to the side the argument by Lacey's Place that it is not an employer "engaged in commerce" within the meaning of the FLSA because the amended complaint fails to create a plausible inference that Lancaster was underpaid. *See Hirst v. Skywest, Inc.*, 910 F.3d 961, 966 (7th Cir. 2018) ("[A] plaintiff alleging a federal minimum wage violation must provide sufficient factual context to raise a plausible inference there was at least one workweek in which he or she was underpaid.").

Focusing first on Lancaster's concern that he was not paid for approximately four hours of work each week, there is no basis to find Lacey's Place liable under the FLSA's overtime provisions because Lancaster never alleges that he worked more than 40 hours per week. *See Parks v. Speedy Title & Appraisal Rev. Servs.*, 318 F. Supp. 3d 1053, 1069 (N.D. Ill. 2018) ("Plaintiff does not allege how many hours she worked in a week (and whether or not this was over forty hours) or how many overtime hours she worked without being paid the proper salary. Without such allegations, Defendants are not on notice of the factual basis for her FLSA claim.").

The analysis is slightly more complex with respect to the potential liability of Lacey's Place under the Act's minimum wage provisions. Recall, Lancaster alleged that he was not compensated for approximately four hours of time worked each week for about 87 weeks. (Doc. 67). Lacey's Place observes that even accounting for these hours, Lancaster's effective hourly wage never fell below the federal minimum wage of $7.25 an hour. That is, Lancaster netted $412.50 per week based on 25 hours of work paid at his regular salary of $16.50 an hour. If, as he alleges, Lancaster *actually* worked 29 hours each week (four additional hours), his effective hourly rate would be $14.22 ($412.50 divided by 29 hours) — above the federal minimum.

Lacey's Place does not cite any authority supporting this effective hourly wage approach, but it appears to be derived from the so-called Klinghoffer Rule, articulated by the Second Circuit in 1960. *See United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487 (2d Cir. 1960). Under that rule, section 206's minimum wage requirement is satisfied so long as the total wage paid to an employee during a week, divided by the total number

of hours worked, exceeds the federal minimum wage. *Id.* at 490. The Seventh Circuit has adopted this per-workweek approach. *See Hirst*, 910 F.3d at 966. One court persuasively has explained why *Klinghoffer*'s rule may not be compelled by the text of the statute. *See Norceide v. Cambridge Health All.*, 814 F. Supp. 2d 17, 23 (D. Mass. 2011). Nevertheless, this Court is bound by the Seventh Circuit precedent, and Lancaster does not offer a cogent argument in response. He does not allege the existence of any week in which his total wages, divided by his total time worked, fell below the federal minimum. Although Lancaster may have other remedies to recover compensation for the time at issue, the FLSA is not one.

Lancaster also claims that he was "denied eight hours of holiday pay," which he values at $180. (Doc. 67, p. 5). However, the FLSA does not mandate employers pay their employees a special rate for time worked on holidays. *Lutz v. Froedtert Health Inc.*, No. 23-974, 2025 WL 2049206, at *8 (E.D. Wis. July 22, 2025), *amended*, No. 23-CV-974, 2025 WL 2804431 (E.D. Wis. Oct. 2, 2025) ("[N]either federal nor state law requires employers to pay additional compensation for work performed on holidays."); *Diaz v. E&K Cleaners, Inc.*, No. 16-07952, 2018 WL 439120, at *2 (N.D. Ill. Jan. 16, 2018) ("[T]he FLSA does not provide a free-standing claim for uncompensated work; it merely requires employers to pay employees a minimum wage for all compensable hours and to pay extra compensation for overtime hours."). Lancaster does not allege that his alleged missing holiday pay resulted in unpaid overtime or unpaid minimum wages in any given week, so he is not entitled to relief under the FLSA.

Lancaster's allegation that Lacey's Place "misclassified" his job title by assigning

him managerial responsibilities likewise is not cognizable under the FLSA. It is true that

employers may face liability for "misclassifying" an employee as exempt from the FLSA's

overtime pay requirements. *See Urnikis-Negro v. Am. Fam. Prop. Servs.*, 616 F.3d 665, 666

(7th Cir. 2010). But Lancaster's misclassification theory seems to have less to do with

whether he was treated as exempt and more to do with whether he was entitled to be

paid as a manager rather than as an "attendant." The FLSA does not have anything to say

about whether an employee properly was assigned to one job title or another by their

employer. *See Hart v. AC Pavement Striping Co.*, No. 23-4584, 2024 WL 4213305, at *2 (N.D.

Ill. Sept. 17, 2024) (citing *Reyes v. Remington Hybrid Seed Co.*, 495 F.3d 403, 405 (7th Cir.

2007). Nothing in Lancaster's amended complaint plausibly suggests that he was denied

overtime or minimum wage because of his classification. The Court is unable to derive

from the amended complaint any violation of the FLSA.[5] Accordingly, this claim will also

be dismissed.

### c. RICO (Count V)

Lancaster's final federal claim seeks to hold the defendants liable under the

Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961, *et seq.*

Lancaster cites § 1962(c), which provides that "[i]t shall be unlawful for any person

employed by or associated with any enterprise engaged in, or the activities of which

affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in

---

[5] To be clear, the Court does not find that Lancaster has *no* entitlement to the compensation he claims.
However, the FLSA does not provide a remedy on the facts alleged here.

the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a claim pursuant to that provision, a plaintiff must allege a defendant "engaged in the (1) conduct (2) of an enterprise (3) through a pattern of racketeering activity." *Muskegan Hotels, LLC v. Patel*, 986 F.3d 692, 698 (7th Cir. 2021) (citing *Salinas v. United States*, 522 U.S. 52, 62 (1997)). Congress defined "racketeering activity" to include a wide array of offenses under federal and state law. *See* 18 U.S.C. § 1961(1). A plaintiff also must allege "an injury to [his] business or property" on account of the racketeering activity. *Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 728 (7th Cir. 2014) (quoting *Haroco, Inc. v. Amer. Nat'l B & T Co. of Chi.*, 747 F.2d 384, 398 (7th Cir. 1984)).

Defendants argue that the amended complaint's account of the RICO claim is entirely conclusory, containing a list of predicate statutory violations but no description of how their elements are satisfied, falling short of Rule 9(b)'s particularity requirement, which is applicable here.

Lancaster does not describe his RICO claim in much detail. He writes merely that "Defendants formed an enterprise under 18 U.S.C. § 1961(4)" and lists the predicate unlawful acts as wire fraud, identity theft, mail fraud, and obstruction of justice. (Doc. 67, p. 4). He adds that the core issue is that Defendant Lucky Lincoln obtains revenue by "the unlawful use of Plaintiff's credentials." (*Id.*). As best the Court can tell from Lancaster's response briefs (Docs. 70, 74, 93), his theory seems to be that the defendants' use of his name on the Lacey's Place liquor license was a fraudulent scheme to obtain revenue.

A pattern of racketeering activity "requires the completion of at least two predicate acts." *Bielfeldt v. Graves*, 726 F. App'x 488, 490 (7th Cir. 2018). Generally, a complaint must provide "a short and plain statement of the claim[s] showing that the pleader is entitled to relief" sufficient to provide the defendant fair notice of the claim. Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555. But for RICO claims where fraud is among the predicate acts of racketeering activity, Rule 9(b)'s higher pleading standard applies. *Ratfield v. United States Drug Testing Lab'ys, Inc.*, 140 F.4th 849, 852 (7th Cir. 2025); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 729 (7th Cir. 1998). Under that rule, a plaintiff must state "with particularity" any "circumstances constituting fraud." Fed. R. Civ. P. 9(b). Essentially, the "who, what, when, where, and how" of the fraud must be sufficiently alleged. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Moreover, a plaintiff "must allege 'the identity of the person'" making the fraudulent statement. *Goren*, 156 F.3d at 729 (quoting *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994)).

The Court agrees with the defendants that Lancaster's amended complaint falls woefully short of alleging a pattern of racketeering activity. He lists several statutes but does not explain in any detail how any defendant violated them. He also broadly "lump[s] together" all defendants and claims they all acted unlawfully, which is insufficient to state a RICO claim. *See Joe Schroeder Legacy, LLC v. Serv. 247 of Illinois, Inc.*, No. 20- 3201, 2022 WL 408272, at *4 (N.D. Ill. Feb. 10, 2022). The Court understands Lancaster's general concern regarding Lacey's Place's use of his name on its liquor license, but he does not offer a clear statement of how that conduct constituted wire fraud, mail fraud, or identity theft. *Cf. Jennings v. Emry*, 910 F.2d 1434, 1438 (7th Cir. 1990) (noting

Page 21 of 23

that "conclusory allegations that various statutory provisions have been breached are of no consequence if unsupported by proper factual allegations"). It is far from clear what unlawful conduct he believes the defendants engaged in, since the only issue he identifies with regard to the Lacey's Place liquor license is the fact that he signed the application after it had already been notarized. As he later explains, however, he signed on the instruction of the government official processing the application and, ostensibly, not at the direction of any defendant. (Doc. 9-33, p. 24).

Relatedly, Lancaster also fails to allege a *pattern* of racketeering activity, which Congress defined to require "at least two acts of racketeering activity" within a 10-year period. 18 U.S.C. § 1961(5). At best, the amended complaint describes a single instance of potential notary fraud in a single licensing application. Even if that conduct violated multiple RICO predicates (as Lancaster seems to believe) it seems to have been one act only. *See J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815, 820 (7th Cir. 1991) (explaining that "there be continuity and relationship among the predicate acts"). Therefore, Lancaster's RICO claim must also be dismissed.

d. State Law Claims

The amended complaint also pleads a variety of claims under state law, including fraudulent inducement and licensing fraud, promissory estoppel, and "Enterprise Liability – Veil Piercing." Defendants assert that Lancaster does not have standing to bring his fraud claim and that the other claims are inadequately pleaded. The Court need not address these arguments. Supplemental jurisdiction under 28 U.S.C. § 1367 is the only potential source of subject matter jurisdiction over Lancaster's state law claims. The Court

has already determined that all of Lancaster's federal claims must be dismissed, and "[t]he usual practice in this circuit is for district courts to 'dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.'" *Hagan v. Quinn*, 867 F.3d 816, 830 (7th Cir. 2017) (quoting *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999)). There is no basis apparent from the record to retain jurisdiction over these claims, particularly where the fraud claims focus on Illinois' alcohol and notarization laws, and the promissory estoppel claim would not be barred by a statute of limitations, *see* 735 Ill. Comp. Stat. Ann. 5/13-205. Counts IV, V, and VI therefore will be dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss (Doc. 69, 72, 91) are **GRANTED**, and the motions to dismiss addressed to the prior complaint (Docs. 39, 51) are **DENIED as moot**. The amended complaint (Doc. 67) is **DISMISSED without prejudice**.

Lancaster is granted leave to file a second amended complaint on or before **May 6, 2026**. Failure to file an amended complaint by the prescribed deadline will result in the dismissal of this action with prejudice.

**IT IS SO ORDERED.**

DATED:  April 6, 2026

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**